UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **MITCHELL L GURST** | **CASE NO. 1:18-CV-00282** |
| **VERSUS** | **JUDGE DRELL** |
| **DEAN DOVE ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |

### RULING

Before the court is Defendants' motion for summary judgment (Doc. 42) and Plaintiff's opposition (Doc. 44) thereto. For the reasons expressed herein, the motion will be GRANTED.

### I.     Relevant Facts

Plaintiff Mitchel L. Gurst ("Gurst") was hired as a corrections officer for the Natchitoches Parish Detention Center ("NPDC") on August 1, 2001. Gurst continued in that capacity until September 15, 2016 when he and three other NPDC employees were terminated[1] for their roles in failing to thwart the escape of three NPDC inmates.

According to the NPDC Policy and Procedure Manual (Doc. 42-10): "The NPDC has a system for physically counting Offenders. At least six (6) formal counts are conducted each twenty-four (24) hour period." (Id. at p.2). A memorandum from Captain Glenn Sers dated On December 10, 2015, expands upon how the physical counts were to be conducted: Five general "count times" occurred throughout the day and three "meal time" counts were to be conducted at 5:15 a.m., 11:00 a.m., and 5:15 p.m. (Doc. 42-11).

On August 27, 2016, three inmates escaped from the NPDC at approximately 10:00 a.m., but the escape was not noticed until 4:00 p.m. the following day. While Gurst was not on duty the

---

[1] Four other employees were suspended and/or demoted for their role in the inmates' escape.

night of the escape, he was present the next day and worked a 12-hour shift. "During his 12-hour August 28, 2016 shift, Gurst and another Corrections Officer, Cassius Shepherd (who was also terminated) were in charge of feeding inmates housed in the NPDC's B Dorm, from which the three inmates had escaped the previous night." (Doc. 42-3, p. 3). As explained in the affidavit of Sheriff Victor E. Jones, "Gurst was charged with the responsibility of (1) visually observing each inmate who received his own individual tray, and (2) checking that inmate off the 'Offender roster' printed from the Jail Information Management System. If, for any reason, an inmate did not appear to receive his meal tray, Gurst was required to personally ascertain the reason for the inmate's non-appearance." (Id.).

An internal investigation by NPDC supervisors under the command of then Assistant Chief Henson ("Henson") determined that Gurst and Shepherd allowed inmates to obtain trays for the escaped inmates at both the 5:30 a.m. and 11:00 a.m. Gurst and Shepherd then prepared a Daily Meal Report showing the escaped inmates received their meal and were physically present. Accordingly, an additional five hours passed before the inmates were determined to be missing. Because of their failure to conduct a proper meal time count, Gurst and Shepherd were terminated.

On or about November 23, 2016, Gurst filed an administrative charge of discrimination with the Louisiana Commission on Human Rights ("EEOC") alleging he was discriminated against on the bases of race and age. (Doc. 42-7). Gurst received his Right to Sue notice on or about December 4, 2017 and then filed suit against Dean Dove, Henson, Victor Jones, NPDC and Natchitoches Parish Sheriff's Office ("NPSO")[2] alleging wrongful termination, harassment, discrimination based on age, race, gender and sex, failure to train, failure to pay leave and fringe benefits, bad faith, intentional tort, continuing tort, and disparate treatment.

---

[2] On March 6, 2019, both the NPDC and NPSO were dismissed as improperly named parties. (Docs. 26 and 27).

**II.     Summary Judgment Standard**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anders on v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 680 (5th Cir.2011) (internal citations omitted). It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case. The burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The nonmoving party must establish the existence of a genuine issue of material fact for trial by showing the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir.1995). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof. Id. "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." Duffy, 44 F.2d at 312, citing Anderson v Liberty Lobby, 477 U.S. at 247.

3

Documents filed by pro se litigants must be construed liberally and held to a less stringent standard than those filed by represented parties. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972). However, "pro se parties must still comply with the rules of procedure and make arguments capable of withstanding summary judgment." Ogbodiegwu v. Wackenhut Corr. Corp., 202 F.3d 265 (5th Cir. 1999) (per curiam) (unpublished table decision).

**III. Analysis**

<u>Title VII, §1981 and §1983</u>

Gurst asserts claims for wrongful termination based on race, age, gender and sex discrimination and harassment. Gurst states he brings his claim pursuant to 28 U.S.C. §1648 but that statute provides for time limitations on commencing civil actions arising under Acts of Congress. Accordingly, we will review these claims under Title VII, §1981, and §1983. The summary judgment test for discrimination claims under §1981 and §1983 is the same as the test for discrimination claims under Title VII. Pratt v. City of Houston, 247 F.3d 601, 605 n.1 (5th Cir.2001).

A review of his administrative charge with the EEOC shows Gurst asserted only two claims, one for discrimination based on race and one for discrimination based on age. (Doc. 42-7). The Fifth Circuit "has long required plaintiffs to exhaust their administrative remedies before bringing suit under Title VII." Price v. Choctaw Glove & Safety Co, Inc., See also Dao v. Auchan Hypermarket, 96 F.3d 787, 789 (5th Cir.1996); Taylor v. Books A Million, Inc, 296 F.3d 376, 378-79 (5th Cir.2002). While courts are to consider what "can reasonably be expected to grow out of the charge of discrimination," neither Gurst's harassment claim nor his discrimination claims based on gender or sex grow out of the administrative charge filed here. Pacheco v. Mineta, 448

4

F.3d 783, 789 (5th Cir.2006) (citing Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir.1970).

Even if Gurst had exhausted his administrative remedies as to his claims for gender and sex discrimination and harassment, his filings are devoid of any assertions which would substantiate such claims. Accordingly, these claims lack merit and will be dismissed.

Gurst did exhaust administrative remedies regarding his claims for wrongful termination based on race and age discrimination. Defendants assert Gurst cannot establish a *prima facie* case of either race or age discrimination and, even if he could, he cannot establish by a preponderance of the evidence that the reason for his termination was pretextual. Under the McDonnell Douglas v. Green, 411 U.S. 792 (1973) burden shifting framework, the plaintiff must first establish a *prima facie* case that creates the inference of discrimination. Id. at 802. To establish a race discrimination claim, a plaintiff must show he: (1) was a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or in the case of disparate treatment, was treated less favorably than other similarly situated employees. Bryan v. McKinsey& Co., 375 F.3d 358, 360 (5th Cir.2004). If that proof is established, the burden shifts to the defendant to produce evidence establishing the adverse employment action was taken for a legitimate, non-discriminatory reason. Id. Assuming such a showing is made, the burden returns to the plaintiff to establish, by a preponderance of the evidence either: (1) the defendant's reason is not its true reason, but is a pretext for intentional discrimination, or (2) while the reason may be true it is but one of the reasons for his/her conduct, another of which is discrimination. Id. at 804-05; Reeves v. Anderson, 530 U.S. 133 (2000); Machinchick v. PB Power, Inc., 398 F.3d 345, 352 (5th Cir.2005), Keelan v. Majesco Software, Inc., 407 F.3d 332, 341 (5th Cir.2005). This second showing, known as the "mixed-motive

framework", is not part of the traditional McDonnell-Douglas framework but is employed by the courts in this circuit in an identical manner.

It is undisputed that Gurst was a member of a protected class, was qualified for the job, and suffered an adverse employment action by his employer. What is disputed is whether Gurst was either replaced by someone outside of his protected class or treated less favorably than similarly situated employees outside of the protected group under nearly identical circumstances. See Grimes v. Texas Dept. of Mental Health, 102 F.3d 137, 140 (5th Cir.1996); Okoye v. University of Texas Houston Health Science Center, 245 F.3d 507, 512-13 (5th Cir.2001). Defendants argue Gurst was not replaced by someone outside his protected class nor was he treated less favorably than other similarly situated employees. In support, they note that following the termination of Gurst and the other three employees who failed to thwart the inmate escape, Sheriff Jones hired three (3) African American male employees and four (4) Caucasian male employees. (Doc. 42-3). Additionally, the three other employees who were terminated along with Gurst, were two black males and one white male. (Id.). Gurst provides nothing to contradict Defendants' account. Thus, he fails to establish a *prima facie* case of race discrimination.

Even if he had established a *prima facie* case, Gurst cannot establish the articulated reason for his termination was a pretext for race discrimination. The record clearly establishes Gurst was terminated for a serious failure to follow NPDC's policies and procedures regarding physical inmate counts. Defendants do not contend Gurst was responsible for the inmates' escape, but they do hold him responsible for failing to determine at both 5:30 a.m. and 11:00 a.m. that the escaped inmates were not present. Gurst fails to establish via argument or evidence anything to the contrary. We cannot imagine a more legitimate reason for his termination than failure to an inmate count in such circumstances. Accordingly, his race discrimination claim will be dismissed.

6

Gurst also fails to establish a *prima facie* case for age discrimination. The Age Discrimination in Employment Act ("ADEA") requires a plaintiff to show that his age was the "but-for" cause of his termination. In this context, "but-for" means that "age was the 'reason' that the employer decided to act." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009) (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993) ("Whatever the employer's decision making process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome.")).

Proving age was a "motivating factor" is not enough. Gross, 507 U.S. at 180; McMichael v. Transocean Offshore Deepwater Drilling, Inc., 934 F.3d 447 (5th Cir.2019); Moss v. BMC Software, Inc., 610 F.3d 917, 928 (5th Cir.2010). A plaintiff can establish age was the "but-for" cause with direct or indirect evidence. Where, as here, there is not direct evidence of age discrimination, the courts use the burden shifting framework from McDonnell Douglas as explained *supra*.

Gurst must establish his *prima facie* case by establishing "(1) he was discharged; 2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) 'evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'" Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 41 (5th Cir.1996) (quoting Amburgey v. Cohart Refactories Corp., Inc., 936 F.2d 805, 812 (5th Cir.1991)). Again, it is the last factor that Gurst cannot establish. He has presented only conclusory statements he was discriminated against because of his age. Such is insufficient to defeat a motion for summary judgment. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir.1996); Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir.1994).

Even if Gurst could have established the final element of a *prima facie* case for age discrimination, he could not establish pretext for the same reasons mentioned above. There is simply no statements nor evidence in opposition to this motion that undermines the Defendants' assertions that he was terminated for cause - because he failed to follow policies and procedures for conducting the physical inmate count at the breakfast and lunch mealtimes.

<u>Reinstatement pursuant to the Americans with Disabilities Act</u>

Gurst additionally requests this court to mandate reinstatement pursuant to the Americans with Disabilities Act ("ADA"). 42 U.S.C. §12101, *et seq.* "A plaintiff asserting a claim against his employer under the ADA must exhaust his administrative remedies before filing suit against his employer in federal court. <u>Dao v. Auchan Hypermarket</u>, 96 F.3d 787, 788-89 (5th Cir.1996). "The ADA incorporates by reference the procedures for exhaustion applicable to claims under Title VII." <u>Williamson v. American Nat. Ins. Co.</u>, 695 F.Supp2d 431, 444 (S.D. Tex.2010) (citation omitted). In the Title VII context, this court has recognized that the liberal standards for construing EEOC charges and *pro se* complaints must be balanced against the fact that Title VII contemplates no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance. <u>Pacheco</u>, 448 F.3d at 789.

Gurst did not complain of disability discrimination in his EEOC complaint either specifically or in a way that would cause this court to believe a claim under the ADA could "reasonably be expected to grow out of the charge of discrimination." <u>Sanchez</u>, 431 F.2d at 465. In fact, there are no statements by Gurst in either his complaint, his EEOC charge, or the opposition to the motion for summary judgment that identify any disability. Accordingly, the court cannot even assess whether he is a qualified individual within the meaning of the ADA, much less whether he was discriminated against because of that supposed disability. See <u>Melton v. Dallas Area Rapid</u>

Transit, 391 F.3d 669, 971-72 (5th Cir.2004).  Accordingly, the claim lacks merit and will be dismissed.

Disparate Impact

Gurst sets forth a claim for "disparate treatment" based on race and age.  The Defendants have interpreted the claim as one for disparate impact despite the fact that no employment policy has been cited by Gurst as having been violated.

In Raytheon Co. v. Hernandez, 540 U.S. 44 (2003), the United States Supreme Court explained,

> This Court has consistently recognized a distinction between claims of discrimination based on disparate treatment and claims of discrimination based on disparate impact.  The Court has said that "'[d]isparate treatment' …is the most easily understood type of discrimination.  The employer simply treats some people less favorably than others because of their race, color, religion, sex, or [other protected characteristic]."  Liability in a disparate treatment case "depends on whether the protected trait…actually motivated the employer's decision."  By contrast, disparate-impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity."  Under a disparate-impact theory of discrimination, "a facially neutral employment practice may be deemed [illegally discriminatory] without evidence of the employer's subjective intent to discriminate that is required in a 'disparate-treatment' case."

Id. at 52-53 (internal citations omitted).

We have already discussed how neither age nor gender actually motivated the Defendants' decision to terminate Gurst.  Accordingly, a claim for disparate treatment (if that is what this is) fails.  The same is true as to any alleged claim for disparate impact as Gurst fails to assert any allegations that a NPDC or NPSO employment practice or policy was aimed at impacting either African Americans or those over people over the age of forty (40).

14th Amendment Due Process Violations

In his continuing shotgun approach, Gurst asserts the Defendants engaged in conduct that constitutes "due process violations under [the] 14th Amendment" with respect to his wrongful termination. Gurst cannot establish a claim for substantive nor procedural due process as he has no property interest or right to employment. See Moulton v. City of Beaumont, 991 F.2d 227, 230 (5th Cir.1993); Gives v. City of Eunice, 612 F.Supp2d 522, 545 (W.D. La. 2007). Whether one has a property interest in his job is determined by state law. Bishop v. Wood, 426 U.S. 341, 347 (1976). Under Louisiana law, which is applicable in this case, a person employed for an indefinite period is an employee at will. Gilbert v. Tulane University, 909 F.2d 124, 125 (5th Cir.1990). Gurst has not shown that he was employed under a contract and Defendants assert his employment was at will. Accordingly, we find that Gurst was an at will employee and as such, he did not enjoy a property interest or right in his employment. See Cabrol v. Town of Youngsville, 106 F.3d 101, 106 (5th Cir.1996) ("Absent a contractual agreement for employment for a specified term or a legislative regulatory restraint on a public entity's termination authority, Louisiana law does not establish a right to continued employment"). There is no Due Process violation here.

Equal Pay Act of 1963

Gurst's complaint mentioned "violations of the equal pay act of 1963" without any further explanation. "To state a prima facie case for wage discrimination under the [Equal Pay Act], a plaintiff must show that the employer pays different wages to men and women, the employees perform 'equal work on jobs the performance of which requires equal skill, effort, and responsibility,' and the employees perform their jobs 'under similar working conditions.'". Strong v. rambling State University, 159 F.Supp3d. 697, 710 (W.D. La. 2015) (quoting Thibodeaux-Woody v. Houston Comm. Coll., 593 Fed.Appx. 280, 283 (5th Cir.2014) (citing 29 U.S.C.

§206(d)(1)); Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974). As stated, no such allegations in the complaint and none are asserted in an opposition to summary judgment. Thus, no *prima facie* showing has been made and the claim will be dismissed.

Failure to Train

Gurst alleges liability also because he says NPDC failed to provide him proper training for "inmate escape prevention;" "monitoring detention of inmates in tier housing populations of more than 35 inmates;" and "basic electronic door locking testing for malfunction of equipment." There is no cognizable claim here for failure to train under §1983 as there is no deprivation, alleged or real, of Gurst's "rights, privileges or immunities secured by the Constitution and laws." 42 U.S.C. §1983. We also fail to find any other legally cognizable claim for failure to train as there is no correlation between the allegations and the real basis for Gurst's termination- his own gross negligence.

Punitive Damages

Punitive damages are claimed but are not available in this case. First, Gurst has not and cannot establish a *prima facie* case of discrimination. Second, he has not alleged, much less shown that the Defendants acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. §1981a(b)(1).

State Law Claims

"The district courts may decline to exercise supplemental jurisdiction over a claim …if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S. §1367(c)(3). As we have found a basis under which to dismiss all of Gurst's federal claims, we decline to exercise jurisdiction over any state law claims remaining including his claims for unpaid wages, wrongful termination, violation of the Police Officer's Bill of Rights pursuant to La. R.S. 40:253,

bad faith, intentional tort, and continuing tort. The state law claims will be dismissed without prejudice so Gurst may pursue any such claims in state court should he decide to do so.

## IV. Conclusion

The essence of this ruling is that these unsubstantiated claims border on the frivolous at every turn. He failed to do his job and was fired. That is all this case is about. Accordingly, Defendants' motion to dismiss Gurst's claims will be granted. We will issue a judgment in conformity with these findings.

SIGNED this 8th day of May 2020, at Alexandria, Louisiana.

DEE D. DRELL, JUDGE
**UNITED STATES DISTRICT COURT**